PENN v. PENN.   See Case No. 10,930.

PENN (UNITED STATES v.).   See Case No. 16,025.

PENNIMAN (DE BRIMONT v.).   See Case No. 3,715.

PENNIMAN (WESTON v.).   See Case No. 17,455.

PENNINGTON (COXE v.).   See Case No. 3,-311.

---

## Case No. 10,938.

### PENNINGTON v. LOWENSTEIN et al.

[1 N. B. R. 570 (Quarto, 157).] [1]

District Court, N. D. Mississippi.   1868.

BANKRUPTCY—ATTACHMENT BY STATE COURT—DEMURRER—LEAVE TO ANSWER.

1. An attachment of a bankrupt's goods, under process in a state court, within four months before bankruptcy, is defeated by the provisions of section 14 of the bankrupt act [of 1867 (14 Stat. 522)].

[Cited in Jones v. Leach, Case No. 7,475.]

2. Demurrer overruled, and the defendant allowed fifteen days in which to answer.

[This was a suit by G. W. Pennington, assignee in bankruptcy of C. D. Bryan, against J. H. Lowenstein and others. The case is now before the court on the defendants' demurrer.]

HILL, District Judge. The questions presented to the court arise upon the defendants' demurrer to complainant's bill. The bill, in substance, states that on the 24th day of October, 1867, said Lowenstein & Brothers sued out of the circuit court of Monroe county an attachment against said Bryan, which was, by the sheriff of said county, on the next day, levied upon a stock of goods, as the property of said Bryan, and which goods were afterwards sold by the sheriff, who now holds the proceeds; that said attachment suit remains undetermined; that, on the 8th day of November, 1867, said Bryan filed in this court his petition praying to be declared a bankrupt, and was, on the 6th day of December thereafter, so declared; that, on the 3d day of February, 1868, complainant was duly appointed assignee of said estate, and received an assignment thereof. The prayer of the bill is, that the sheriff be enjoined from paying said proceeds to the plaintiffs in said attachment, and that he be required to pay the same over to complainant, to be applied as this court may direct. The defendants, by their demurrer, admit the facts as stated to be true; but insist that, by the levy of the attachment the title to the goods

[1] [Reprinted by permission.]

became vested in the sheriff, for the payment of such judgment as might thereafter be obtained in said suit; that the state court, having obtained jurisdiction thereof, cannot be ousted or interfered with by this court. And whether this is so or not, is the only question now to be determined.

The 14th section of the bankrupt act of 1867, provides "that the assignment therein provided shall relate back to the commencement of proceedings in bankruptcy, and by operation of law shall vest in the assignee all the title and interest which the bankrupt then had to his estate, real and personal, although the same may then have been attached by mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next before the commencement of such proceedings." If this provision of the act embraces the attachment and proceedings in this cause, it is clear that the demurrer should be overruled, and the prayer of the complainant granted. It is insisted by complainant's counsel that it is so embraced, and by defendant's counsel that it is not. The determination of this question depends upon the construction which should be given to the term mesne process, and this depends upon the intention of congress in the passage of the law. The object of the law was, that, when an act of bankruptcy was committed, no matter by what means, all the creditors of the bankrupt should share equally, according to their respective rights, in the bankrupt's estate. To give the term its restricted meaning, would most clearly defeat that object. Such being the case, the next emergency is, has the term a more general application, so that it can be applied to secure the object of the law? Upon this point there is no difficulty. Mr. Blackstone, in his Commentaries, at page 280, says "that mesne process is sometimes put in contradistinction to final process, or process of execution, and then signifies all such process as intervenes between the commencement and end of the suit." The term is used in the same sense repeatedly in our own Code, and it is in that sense that the term is most usually used in the courts. Were there any doubts about this being the proper construction to be given the term, as applied to this case, it would be greatly aided by reference to the present English bankrupt law, and from which our present act was mainly taken. By that law it is provided "that to preserve the lien of the attachment the levy and sale must be made before the act of bankruptcy, and that the knowledge by the party for whose benefit it was made, of a former act of bankruptcy, renders the proceeding invalid." With but one exception every cause for attachment, under the laws of this state, is by this act declared to be an act of bankruptcy, and some one of which must have been the cause alleged for the issuance of this attachment. The act of 1841 [5 Stat. 440], contained no

provision similar to that in the 14th section of the bankrupt act of 1867; so that the authorities cited by counsel have no application to this case. The power of this court to restrain litigants in the state courts when it is necessary to give effect to the bankrupt law, and its jurisdiction of the bankrupt, his estate, and all persons interested therein, is too well settled upon principle and authority to be successfully controverted.

After a careful examination of the question, I am constrained to say, in the language of Mr. James, in his valuable treatise on bankruptcy, at page 45, that "the effect of the 14th section of the act of 1867, is absolutely to defeat all attachments issued against the property of the bankrupt, made within four months before the bankruptcy." Such being the case, the demurrer will be overruled, and the defendants allowed fifteen days in which to answer.